**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KYLE CHAPMAN MOTOR SALES,** | § | **LEAD CASE NO. 24-10143-smr** |
| **L.P.,** | § | |
| | § | |
| **KCMS PREMIER CREDIT, INC.,** | § | **SECOND CASE No. 24-10144-smr** |
| | § | |
| **CAVALIER LAMAR HOLDINGS,** | § | **THIRD CASE No. 24-10146-smr** |
| **L.P.** | § | |
| | § | **CHAPTER 11** |
| Debtors.[1] | § | **Jointly Administered Under** |
| | § | **Case No. 24-10143-smr** |

---

**KYLE CHAPMAN MOTOR SALES, LP, KCMS PREMIER CREDIT, INC., AND**
**CAVALIER LAMAR HOLDINGS, LP.**
**AMENDED JOINT PLAN OF REORGANIZATION**

---

Date: May 9, 2025

Todd Headden
  State Bar No. 24096285
  THeadden@HaywardFirm.com
Charlie Shelton
  State Bar No. 24079317
  CShelton@HaywardFirm.com
HAYWARD PLLC

AUSTIN
7600 Burnet Rd.
Suite 530
Austin, TX 78757
(737) 881-7100 (phone/fax)

ATTORNEYS FOR DEBTORS

---

[1] The address for the Debtors is: 18300 S. IH 35, Buda, Texas 78610. The last four digits of their respective tax identification numbers are: Kyle Chapman Motor Sales, LP (#8241); KCMS Premier Credit, Inc. (#4717); Cavalier Lamar Holdings, LP (#5509).

## TABLE OF CONTENTS

**ARTICLE I** ...................................................................................................... **5**

**DEFINITIONS AND USE OF TERMS** ........................................................... **5**

    **1.01**    Defined Terms ............................................................................................. 5

    **1.02**    Number and Gender of Terms ..................................................................... 9

    **1.03**    Terms Defined in the Bankruptcy Code ..................................................... 9

    **1.04**    Headings ...................................................................................................... 9

    **1.05**    Computation of Time.. ................................................................................. 9

**ARTICLE II** OVERVIEW OF PLAN ................................................................ **9**

    **2.01**    Generally ...................................................................................................... 9

**ARTICLE III** PROVISIONS APPLICABLE TO ALL CLAIMS ..................... **9**

    **3.01**    Treatment of Claims .................................................................................. 10

    **3.02**    Allowed Claims ......................................................................................... 10

    **3.03**    Amount of Claims. .................................................................................... 10

    **3.04**    Allowance of Post-Petition Interest, Fees, and Costs ............................... 10

    **3.05**    Filing of Administrative Claims ................................................................ 10

    **3.06**    Cure Claims ............................................................................................... 10

    **3.07**    Filing of Requests for Post-Petition Fees or Costs ................................... 10

    **3.08**    Objections to Claims. ................................................................................ 10

    **3.09**    Distributions on Contested Claims ............................................................ 11

**ARTICLE IV** ADMINISTRATIVE AND PRIORITY CREDITORS .............. **11**

    **4.01**    Administrative Expense Claims and Other § 507(a)(2) Priority Claims. ...... 11

    **4.02**    Claim Classification. ................................................................................. 11

       **A.**    Unclassified Claims. ................................................................................. 12

       **B.**    **Class 1 – Administrative Expense Claims.** ................................................. 12

       **C.**    **Class 2 – Allowed Secured Claim of Frost Bank (Credit Loan).** ........................ 13

       **D.**    **Class 3 – Allowed Secured Claim of Frost Bank (Term Loan)** ........................... 14

       **E.**    **Class 4 – Allowed Secured Ad Valorem Taxes.** ......................................... 16

       **F.**    **Class 5 – Allowed General Unsecured Claims.** ......................................... 17

       **G.**    **Class 6- Subordinated Unsecured Claims of Affiliated Entities** .......................... 17

       **H.**    **Class 7 – Allowed Equity Interests in the Debtors.** ................................... 18

    **4.03**    Implementation of the Plan. ...................................................................... 18

    **4.04**    In General. ................................................................................................. 18

    **4.05**    Sources of Funds for Implementation of the Plan ...................................... 18

**4.06** Authorization...........................................................................................................18

**ARTICLE V** EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................**19**

**5.01** .........................................................................................................................19

**5.02** .........................................................................................................................19

**ARTICLE VI** CAUSES OF ACTION ...............................................................................**19**

**6.01** Article 5 Causes of Action. ...............................................................................19

**6.02** Other Potential Litigation. ................................................................................19

**ARTICLE VII** EFFECT OF CONFIRMATION ...............................................................**19**

**7.01** Vesting of Property. ..........................................................................................19

**7.02** Plan Binding. ....................................................................................................20

**7.03** Reliance on Other Parties. ................................................................................20

**7.04** **Discharge.** ........................................................................................................20

**7.05** Permanent Injunction. ......................................................................................20

**ARTICLE VIII** MODIFICATION OF THE PLAN ...........................................................**20**

**8.01** Post-Confirmation Modification. ......................................................................20

**8.02** Deemed Acceptance or Rejection. ....................................................................21

**ARTICLE IX** POST CONFIRMATION MATTERS..........................................................**21**

**9.01** Application for Final Decree. ............................................................................21

**9.02** U.S. Trustee. .....................................................................................................21

(a) Fees. .............................................................................................................21

(b) Reports. ........................................................................................................21

**ARTICLE X** DEFAULT .................................................................................................**21**

**10.01** Default by Debtors. ..........................................................................................21

**10.02** Default by Creditors. ........................................................................................21

**10.03** Conversion to Chapter 7 ...................................................................................21

**ARTICLE XI** RETENTION OF JURISDICTION ............................................................**22**

**11.01** Jurisdiction over Matters. .................................................................................22

**ARTICLE XII** MISCELLANEOUS .................................................................................**22**

**12.01** Request for Relief under 11 U.S.C. § 1129(b) - "Cramdown". .........................22

**12.02** Pre-Confirmation Amendment or Withdrawal/Revocation. ..............................22

**12.03** Entire Agreement. .............................................................................................22

**12.04** Payments. .........................................................................................................22

(a) Delivery. .......................................................................................................22

(b) Voided Checks. .............................................................................................23

iii

**12.05**  Governing Law.............................................................................................................. 23

KYLE CHAPMAN MOTOR SALES, LP; KCMS PREMIER CREDIT, INC.; CAVALIER LAMAR HOLDINGS, LP
AMENDED JOINT PLAN OF REORGANIZATION

COMES NOW Kyle Chapman Motor Sales, L.P. ("Chapman Motors"), KCMS Premier Credit, Inc. ("KCMS"), and Cavalier Lamar Holdings, L.P. ("Cavalier", and together with Chapman Motors and KCMS, the "Debtors") as debtors in possession in the Bankruptcy Cases and pursuant to Chapter 11, Title 11, United States Code (the "Bankruptcy Code") propose the following Joint Plan of Reorganization dated May 9, 2025 (the "Plan"), including as it may later be amended, filed contemporaneously with the *Joint Disclosure Statement Under 11 U.S.C. § 1125* (the "Disclosure Statement") which contains important disclosure information regarding the Plan.

ARTICLE I
DEFINITIONS AND USE OF TERMS

**1.01** Defined Terms. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a) **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503, that arose on or after the Petition Date in this bankruptcy case and that is entitled to administrative priority under to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtor and the Debtor's property under 28 U.S.C. § 1930.

(b) **Administrative Expense Claim Bar Date** means the date by which an Administrative Expense Claim must be filed in order to be approved by the Court, which is within sixty (60) days after the Effective Date or it shall be barred.

(c) **Allowed Administrative Expense Claim** means an Administrative Expense Claim representing (a) an obligation incurred in the ordinary course of business or assumed by the Debtor, which will be paid in full or performed by the Debtor in the ordinary course of business, consistent with past practice or (b) an obligation incurred by Professionals for services provided through the Confirmation Date if the Bankruptcy Court order approves the fees and expenses of each such Professional.

(d) **Allowed Claim** means either: (i) a Claim against the Debtor or its property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, was late filed and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtor or its property that is scheduled and not listed as disputed, contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.

(e)     **Bankruptcy Case** means the above-captioned Chapter 11 case or cases pending in this Bankruptcy Court.

(f)     **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(g)     **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor's Bankruptcy Case.

(h)     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's Bankruptcy Case.

(i)     **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtor may not timely be filed or, with respect to proofs of claims held by governmental agencies, the dates by which those must be filed. The Bar Date for government agencies' Claims was Monday, August 11, 2024 and the Bar Date for all other Claims was June 17, 2024.

(j)     **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

(k)     **Cash** means ready money; whatever can be used as money without being converted into another form; that which circulates as money, including bank-bills. This term includes references to "cash on hand."

(l)     **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(m)     **Claimant** means any Person or entity having or asserting a Claim in the Bankruptcy Case.

(n)     **Class or Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles IV of this Plan.

(o)     **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

(p)     **Confirmation Date** means the date on which the Confirmation Order is entered.

(q)     **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

(r)  **Contested Claim** means a Claim against the Debtor or its property that either (a) is listed in the Debtor's schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court, unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(s)  **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

(t)  **Cure Claim** means a Claim in the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract that has been assumed by the Debtor pursuant to 11 U.S.C. § 365.

(u)  **Debtor** means Kyle Chapman Motor Sales, LP, KCMS Premier Credit, Inc., or Cavalier Lamar Holdings, LP, Texas Corporations, which are the debtors in possession in the Bankruptcy Cases.

(v)  **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order, but no later than June 1, 2025.

(w)  **Estate** means the estate of the Debtors created pursuant to 11 U.S.C. § 541.

(x)  **Equity Interest** or **Equity Interest Holder** means the interests of those parties-in-interest listed and described in the List of Equity Security Holders of the Debtor filed in the respective cases[2], and all rights associated therewith, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

(y)  **Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal (generally, fourteen days after entry) has expired and as to which a stay pending appeal has not been granted.

(z)  **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

(aa)  **Holder** refers to the party holding a Claim or interest.

(bb)  **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder

---

[2] Chapman Motors (Docket No. 49); KCMS (Docket No. (33); & Cavalier (Docket No. 25).

of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Reorganized Debtor (i) cure any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstate the maturity of such Claim as such maturity existed before such default, (iii) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such Claim receives, on account of such Claim, cash equal to the amount of such Allowed Claim.

(cc)  **Insider** has the meaning in § 101(31) of the Code.

(dd)  **Lien** shall mean a contractual or statutory lien against or security interest in an interest of the Debtor in real or personal property.

(ee)  **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

(ff)  **Petition Date** means, in the case of Chapman Motors and KCMS, February 13, 2024, and in the case of Cavalier, February 14, 2024, filed their petitions for relief, commencing the Bankruptcy Cases.

(gg)  **Plan** means this Amended Joint Plan of Reorganization Dated May 9, 2025.

(hh)  **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

(ii)  **Property of the Estate** means all property in which the Debtors hold a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

(jj)  **Reorganized Debtors** refers to the new entities that emerges following Confirmation of the Plan, which shall be entities with the same name as on the Petition Date.

(kk)  **Rolled-Up Loan** means the Credit Loan, defined below, as of the Effective Date, which shall include the outstanding principal of the Credit Loan plus any allowable professional fees and expenses of Frost Bank. The terms of the Rolled-Up Loan, as explained in Class 3 will control on the repayment of the debt.

(ll)  **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

(mm)  **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

(nn)  **Subordinated Affiliate Claim** means any Claim by an Affiliate of one of the Debtors for loans or credits extended to the Debtors. Any such Claim shall be subordinated to all other classes of claims consistent with 11 U.S.C. § 510.

(oo)  **Unsecured Claim** means a Claim that is not a Secured Claim.

(pp)  **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

**1.02**  Number and Gender of Terms. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03**  Terms Defined in the Bankruptcy Code. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

**1.04**  Headings. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05**  Computation of Time. In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## OVERVIEW OF PLAN

**2.01**  Generally. Debtors will continue regular normal operations and will make ongoing monthly payments to their secured creditors and proposes to pay all Allowed Secured Claims in full and all Allowed General Unsecured Claims 95%. The first position secured creditor, Frost Bank, which has a security interest in substantially of all the Property of the Estates of the Debtors, except for the Clark Brother's property owned by Cavalier, will be paid in regular monthly installments generated from ongoing operation. Debtors may elect to include proceeds from the sale of unencumbered property, in whole or in part, to the payment of creditors.

**2.02**  The Debtors' liquidation analysis is attached as **Exhibit A** to the Plan.

**2.03**  The Debtors' financial projections, including payments to creditors are attached as **Exhibit B**. Debtors have listed its executory contracts and leases and their proposed treatment in **Exhibit C** to this Plan. The Debtors anticipate they may supplement or amend this Plan and its Exhibits.

## ARTICLE III
## PROVISIONS APPLICABLE TO ALL CLAIMS

**3.01**    Treatment of Claims. This Plan is intended to resolve all Claims against the Debtors and their property of whatever character, whether the Claims are contingent or liquidated, or whether or not allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to ensure that Claimants will receive at least as much pursuant to this Plan as they would receive in a liquidation of the Debtor pursuant to Chapter 7 of the Bankruptcy Code. The Debtors' Liquidation Analysis is attached as **Exhibit A** to this Plan and Debtors reserve the right to amend.

**3.02**    Allowed Claims. To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

**3.03**    Amount of Claims. If the Debtors have scheduled a Claim and have not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled shall control, unless the Creditor files a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim. If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control, unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Claim for which a proof of claim is filed, or to a scheduled Claim, then the amount determined by the Bankruptcy Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

**3.04**    Allowance of Post-Petition Interest, Fees, and Costs. Unless otherwise provided in the Plan, a Claim shall not be entitled to post-petition interest, fees or costs.

**3.05**    Filing of Administrative Claims. Any requests for allowance of Administrative Expense Claims, other than a request for post-petition fees or costs as described in Section 3.07 below, shall be filed within sixty (60) days after the Effective Date or shall be barred.

**3.06**    Cure Claims. Any Cure Claims not scheduled as undisputed, liquidated and non-contingent Claims shall be filed within thirty (30) days after the Effective Date or shall be barred, unless otherwise agreed by the parties.

**3.07**    Filing of Requests for Post-Petition Fees or Costs. Unless otherwise provided for in the Plan, any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within sixty (60) days after the Effective Date or shall be barred.

**3.08**    Objections to Claims. The Reorganized Debtors may object at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such proof of claim is filed. Any proof of claim filed after the Bar Date set by the Bankruptcy Court and applicable to such Claim shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtors may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

**3.09**    Distributions on Contested Claims. No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. When and if a Contested Claim becomes an Allowed Claim, the Reorganized Debtors shall at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls pay the newly Allowed Claim a sum sufficient to bring that Claimant current as if it had been paid according to the Plan since the Effective Date. If a Claim is disputed in whole or in part because Debtors assert either a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim. In addition, any party authorized by the Bankruptcy Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

## ARTICLE IV
## ADMINISTRATIVE AND PRIORITY CREDITORS

**4.01**    Administrative Expense Claims and Other § 507(a)(2) Priority Claims. Where required by the Bankruptcy Code, and upon approval by the Bankruptcy Court, the Reorganized Debtor shall pay the Administrative Expense Claims of the Bankruptcy Case, allowed pursuant to § 503 of the Code, and each Allowed Claim entitled to priority pursuant to § 507(a)(2) of the Code, on a current basis.

**4.02**    The following chart depicts the classification of Claims and Interests for the Debtor pursuant to the Plan.

| Class | Claim or Interest | Status | Voting Rights | Projected Claim Amounts | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Administrative Expense Claims | Unimpaired | Not Entitled to Vote | $150,000 | 100% |
| 2 | Allowed Secured Claim of Frost Bank (Chapman Motors and KCMS- LOC) | Impaired | Entitled to Vote | $10,800,000 | 100% |
| 3 | Allowed Secured Claim of Frost Bank (Cavalier- Mortgage) | Impaired | Entitled to Vote | $1,800,000 | 100% |
| 4 | Allowed Secured Claim for Ad Valorem Taxes | Unimpaired | Not entitled to Vote | $108,795.68 | 100% |
| 5 | Allowed General Unsecured Claims | Impaired | Entitled to Vote | $157,488.03 | 95% |
| 6 | Subordinated Claims of Affiliates | Impaired | Entitled to Vote | (If Any) | N/A |

| 7 | Allowed Equity Interests in the Debtor | Impaired | Not Entitled to Vote | N/A | N/A |

**A.** Unclassified Claims.

The current known claimants in this category are as follows.

| Claimant | Amount Claimed | Basis | Treatment |
| --- | --- | --- | --- |
| United States Trustee | $26,112 | Quarterly Fee Estimate- Q1 2025 | Subject to objection and allowance as set forth herein, this claim shall be paid in full on the Effective Date. |

**B. Class 1 – Administrative Expense Claims.**

Administrative claims consist of expenses incurred during the Chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtors' businesses. Most administrative expense claims consist of claims by professionals employed by the Debtors in the bankruptcy cases, which must be approved by the Bankruptcy Court. Other administrative claims are claims arising post-petition which may have not been paid. The Debtors have paid and intend to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. The Debtors are aware of the following Administrative Claims:

| Hayward LLC (estimated) | HPLLC's fees are currently at approximately $165,000.00 for the bankruptcy. HPLLC anticipates additional fees and expenses related to this matter as it relates to plan implementation, claim objections, and finalizing its fee application, which may bring the total fees for the bankruptcy up to $175,000, but anticipates no higher than $185,000.00 in total. |
| --- | --- |
| | Hayward PLLC has $78,708.50 in trust as security for the payment of these fees. |

The Debtors will pay each Allowed Administrative Expense against the Debtors in full, in Cash, on the later of (a) the Effective Date (or as soon as practicable thereafter), (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, or (c) such other date to which the Debtor and the Holder of the Allowed Administrative Expense agree; provided, however, that Allowed Administrative Expenses representing (a) obligations incurred in the ordinary course of business or assumed by the Debtors will be paid in full or performed by the Debtors in the ordinary course of business, consistent with past practice and (b) obligations incurred to Professionals for services provided through the Confirmation Date will be paid in

accordance with the applicable Bankruptcy Court order approving the fees and expenses of each such Professional; provided, further, however, that Administrative Expense Claims filed after the Administrative Expense Claim Bar Date will be forever barred and disallowed without further order of the Bankruptcy Court.

Final Application for Compensation and Reimbursement of Professionals' Fees and Expenses. All applications for final allowance of compensation and reimbursement of Professionals' fees and expenses must be filed no later than 30 days following the Effective Date and will be subject to the authorization and approval of the Bankruptcy Court.

(a)     Full Settlement. As more specifically set forth in, and without in any way limiting, the Discharge pursuant to this Plan, the distributions provided for in and when paid pursuant to this section are in full settlement and release of all Administrative Expenses.

### C. Class 2 – Allowed Secured Claim of Frost Bank (Credit Loan).

| Estimated Numbers of Creditors | Estimated Total Claim Amounts | Estimated Recovery |
|---|---|---|
| 1 | $10,850,000 | 100% |

This class consists solely of Frost Bank's ("Frost") claim for the pre-petition line of credit ("LOC" or "Credit Loan")) which shall be treated as follows:

Frost will retain its liens on all collateral to secure its Allowed Claim and will be paid in full under the Plan. Frost is secured by certain of the Debtors' assets, consistent with the entered agreed to Cash Collateral Order [Dkt. 53] dated April 3, 2024. Frost's claims shall be treated as fully secured and the Debtor estimates a recovery of 100%.

Debtors will roll the outstanding principal, estimated at $10,800,000, including accrued interest, bank fees, appraisal fees, and attorney's fees (estimated at $50,000) into a new principal amount estimated at $10,850,000 (the "Rolled-up Loan"). The Rolled-up Loan will accrue interest at a rate of 8.75% per annum and payments will be amortized over a 15-year payment period although Debtors will have a balloon payment (the "Balloon Payment") to pay the Rolled-up Loan on the 60th month, (May 31, 2030).

Debtors proposed regular monthly payments of $115,000 with additional payments to be made according to the amortization schedule attached as **Exhibit D**. Additional payments will be: i) $155,000 upon the sale of the Clarks Brothers property (estimated July 2025); ii) $150,000 in June 2026; iii) $75,000 in June 2027; iv) $75,000 in June 2028; and, v) $75,000 in July 2029. The monthly payments of $115,000 plus additional payments will pay a total of approximately $7,397,201, reduce the principal balance to approximately $7,437,031.66 and pay $4,092,672.66 in interest by the Balloon Payment.

Any perfected liens or security interests securing Frost's Allowed Secured Claim will be preserved and continued. Frost shall, upon payment and satisfaction of its Allowed Secured Claim in full as provided herein, transfer any and all titles for the Collateral and any other collateral securing such Allowed Secured Claim to the Debtors and shall execute releases of any remaining

encumbrances upon all of such Collateral in a form satisfactory to the Reorganized Debtors and deliver same to the Reorganized Debtors or its designee.

The written agreements by and between Frost and the Debtors will remain the same, *except to the extent that the terms therein are modified by this Plan*, and such agreements will be deemed to be modified to comport with this Plan. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be deaccelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to Frost, provided, however, that Frost shall be entitled to charge, collect, and receive late charges and other amounts provided by the written agreements between the Debtor and Frost in the event of the Debtors' failure to timely make a payment to Frost on its Allowed Secured Claim under this Plan after Confirmation. For the avoidance of doubt, the Borrowing Base requirement of Section 2.01(a) of the Loan Agreement is suspended as long as Debtors make the payments proposed herein.

Notwithstanding anything to the contrary contained herein, the Reorganized Debtors shall not be liable to Frost for any legal fees, costs, expenses or other charges Frost incurs from and after the Effective Date on account of its efforts to enforce any other guarantees previously delivered to Frost in connection with its Allowed Secured Claim. Notwithstanding anything in the Loan Agreements, the Debtors shall be entitled to bank with any financial institution of their choosing.

No prepayment penalty will be due with respect to any prepayment of Frost's Class 2 Claim.

Nothing herein shall prohibit the Reorganized Debtors from refinancing, selling, or otherwise disposing of the collateral at any time. The Debtors may, in their discretion, make additional payments from available cash flow from time to time before such final payment is due.

**Frost will be temporarily enjoined from pursuing Kyle Chapman on his existing guarantee so long as Debtors do not default under the Plan.**

Class 2 is impaired and entitled to vote.

### D.  Class 3 – Allowed Secured Claim of Frost Bank (Term Loan).

| Estimated Numbers of Creditors | Estimated Total Claim Amounts | Estimated Recovery |
|---|---|---|
| 1 | $1,800,000 | 100% |

This class consists solely of Frost Bank's ("Frost") claim estimated at $1,800,000 for the pre-petition Term Loan which shall be treated as follows:

Frost will retain its liens on all collateral to secure its Allowed Claim and will be paid in full under the Plan. Frost is secured by certain of the Debtors' assets, consistent with the entered agreed to Cash Collateral Order [Dkt. 53] dated April 3, 2024. Frost's claim shall be treated as fully secured and the Debtor estimates a recovery of 100%.

Debtors will continue to pay the outstanding principal, accrued interest, bank fees, appraisal fees, and attorneys fees, if any, into a new principal amount estimated at $1,800,000. And the entire indebtedness shall accrue interest at the pre-default interest rate of 5.49% per annum. Debtors will continue to make monthly payments pursuant to the Term Loan agreement with Frost Bank, currently in an amount of $22,983. Debtors will continue making monthly payments for 60 months, up through May 31, 2030 at which time Debtors will make the Balloon Payment consistent with Class 2.

Any perfected liens or security interests securing Frost's Allowed Secured Claim will be preserved and continued. Frost shall, upon payment and satisfaction of its Allowed Secured Claim in full as provided herein, transfer any and all titles for the Collateral and any other collateral securing such Allowed Secured Claim to the Debtors and shall execute releases of any remaining encumbrances upon all of such Collateral in a form satisfactory to the Reorganized Debtors and deliver same to the Reorganized Debtors or its designee.

The written agreements by and between Frost and the Debtors will remain the same, *except to the extent that the terms therein are modified by this Plan*, and such agreements will be deemed to be modified to comport with this Plan. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be deaccelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to Frost, provided, however, that Frost shall be entitled to charge, collect, and receive late charges and other amounts provided by the written agreements between the Debtor and Frost in the event of the Debtors' failure to timely make a payment to Frost on its Allowed Secured Claim under this Plan after Confirmation.

Notwithstanding anything to the contrary contained herein, the Reorganized Debtors shall not be liable to Frost for any legal fees, costs, expenses or other charges Frost incurs from and after the Effective Date on account of its efforts to enforce any other guarantees previously delivered to Frost in connection with its Allowed Secured Claim.

No prepayment penalty will be due with respect to any prepayment of Frost's Class 3 Claim.

Notwithstanding the foregoing, the Debtors may, in their discretion, make additional payments from available cash flow from time to time before such final payment is due.

If Cavalier sells or refinances either the Airport Blvd. or Buda Location, the proceeds from such sale or loan will be applied to and satisfy the outstanding debt on the Term Loan. Excess proceeds from such sale or loan will be paid to Frost Bank towards the satisfaction of the Rolled Up Loan with an operational reserve of $500,000 available to Chapman Motors if, at the time of closing the sale or loan: i) Chapman Motors will continue operations at the remaining location.

**Frost will be temporarily enjoined from pursuing Kyle Chapman on his existing guarantee so long as Debtors do not default under the Plan.**

Class 3 is impaired and entitled to vote.

### E.  Class 4 – Allowed Secured Ad Valorem Taxes.

| Estimated Numbers of Creditors | Estimated Total Claim Amounts | Estimated Recovery |
|---|---|---|
| 4 | $108,795.68 | 100% |

With respect to all Allowed Secured ad valorem taxes, such claims shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(c) with the first payment due and payable on January 31, 2025. The Reorganized Debtors, in their sole discretion, will either pay such Claims: (i) on the Effective Date; or (ii) when such taxes become due and payable under the laws of the applicable taxing jurisdiction; or (iii) in accordance with the Plan payments set forth in Exhibit A.

All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtors shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtors may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

With respect to Allowed Secured or Priority Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law.

Post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.

Notwithstanding any other provision of this Plan, Travis and Hays Counties shall retain their 2024 & 2025 tax liens.

A failure by any of the Reorganized Debtors to make a payment to a Taxing Authority holding a Priority or Secured Tax Claim pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the holder of a Class 4 Claim, then such holder may exercise any and all rights and remedies the holder of such Class 4 Claim may have under applicable law.

The creditors identified as potentially holding Secured Ad Valorem Claims are as follows:

| Creditor Name | Estimated Total Claim Amounts |
|---|---|
| Hays County (Chapman) | $5,347.16 |

| | |
|---|---|
| Hays CISD (Chapman) | $5,643.19 |
| San Marcos CISD (Chapman) | $2,438.12 |
| Texas Comptroller (Chapman) | $2,000 |
| Travis County (Chapman) | $56,136.10 |
| Travis County Assessor (Chapman) | $4,312.80 |
| Texas Comptroller (KCMS Premier) | $2,000 |
| Hays CISD (Cavalier) | $33,231.11 |
| San Marcos CISD (Cavalier) | $7,298.33 |
| Texas Comptroller (Cavalier) | $2,000 |

Nothing herein shall prohibit the Reorganized Debtors from selling property secured by a Tax Claim at any time provided that the remaining unpaid portion of the Allowed Secured Claim of a Taxing Authority holding an interest in the property and attributable to such property shall be paid in full at such time.

This class is not impaired and not entitled to vote.

### F. Class 5 – Allowed General Unsecured Claims.

| Estimated Numbers of Creditors | Estimated Total Claim Amounts | Estimated Recovery |
|---|---|---|
| 22 | $157,488.03 | 95% |

Class 5 Allowed General Unsecured Claims, including deficiency claims, shall receive a 95% distribution, which amount shall be paid in monthly payments beginning in Month 01 of the Plan and ending in Month 08 according to the projections listed in the Plan payments set forth on **Exhibit B**.

Class 5 is impaired and entitled to vote.

### G. Class 6- Subordinated Unsecured Claims of Affiliated Entities

Class 6 consists of the Allowed Claims of any person or entity who is an "insider" of the Debtors, as such term is defined in Section 101(31) of the Bankruptcy Code.

This Class is comprised of Claims from affiliates of the Debtors that may have, over time, loaned money to the Debtors for their ongoing operations. Debtors believe such Claims may be held by JKM or Linda Rae.

The holders of Class 6 Claims have agreed to subordinate their Allowed Claims to Holders of Allowed Claims in Classes 1 through 5. Class 6 Claims shall be paid as such Holders and Debtors may agree following Confirmation and payment in full of all Allowed Claims pursuant to this Plan.

Class 6 is impaired and entitled to vote, however such vote may not count for 11 U.S.C. § 1129 (a)(10) purposes.

### H.  Class 7 – Allowed Equity Interests in the Debtors.

The equity interest holders in the Debtors will retain their interests in the Reorganized Debtors.

The pre-petition Equity Interest Holders are:

For Kyle Chapman Motor Sales, L.P.

| Holder | Percentage | Interest |
|---|---|---|
| Kyle Chapman, LLC | 1% | Owner and General Partner |
| Kyle Chapman | 99% | Owner and Limited Partner |

For KCMS Premier Credit, Inc.

| Holder | Percentage | Interest |
|---|---|---|
| Kyle Chapman | 100% | Owner |

For Cavalier Lamar Holdings, L.P.

| Holder | Percentage | Interest |
|---|---|---|
| Kyle Chapman, LLC | 1% | Owner and General Partner |
| Kyle Chapman | 99% | Owner and Limited Partner |

Class 7 is impaired and not entitled to vote.

IMPLEMENTATION OF THE PLAN

**4.03**  Implementation of the Plan. The Plan will be implemented pursuant to 11 U.S.C. § 1123(a) as set forth above. The obligations arising hereunder will be satisfied from the Debtors' ongoing operations, existing Debtor funds, and the liquidation of the Clark Brother's property.

**4.04**  In General. If the Plan is approved by the Court, a Confirmation Order will be entered. The Debtors will continue to operate as debtors-in-possession and discharge their duties under Chapter 11 until the Effective Date of the Plan.

**4.05**  Sources of Funds for Implementation of the Plan. The Reorganized Debtors will continue to operate their businesses from and after the Effective Date. The obligations arising hereunder will be satisfied from projected disposable income from the Debtors' ongoing operations, existing Debtor funds, and the sale of the unencumbered real property.

**4.06**  Authorization. The Reorganized Debtors shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code. To this end, the Reorganized Debtors are authorized and directed to execute all documents necessary or appropriate to effectuate the terms of the Plan.

**ARTICLE V**
EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01**    Debtor has listed its executory contracts and leases and their proposed treatment in **Exhibit C** to this Plan.

**5.02**    Any executory contracts and unexpired leases of the Debtor that are not expressly assumed shall be rejected under the Plan and counterparties to such executory contracts shall have 30 days from the Effective Date of the Plan to file a Proof of Claim arising out of such rejection. Executory contracts and unexpired leases of the Debtor that are not expressly assumed shall be rejected under the Plan and counterparties to such executory contracts shall have 30 days from the Effective Date of the Plan to file a Proof of Claim arising out of such rejection.

**ARTICLE VI**
CAUSES OF ACTION

**6.01**    Article 5 Causes of Action. The Reorganized Debtors reserve all rights to pursue, in their sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws. ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE DEEMED PREFERENCES OR FRAUDULENT TRANSFERS, WITH ACTUAL OR CONSTRUCTIVE NOTICE OF THIS BANKRUPTCY CASE ARE HEREBY PUT ON NOTICE THAT THE REORGANIZED DEBTOR MAY PROSECUTE THESE CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF THE DEBTORS' CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED IN THE PLAN, OR CONFIRMATION ORDER.

**6.02**    Other Potential Litigation. In addition to preferences and fraudulent transfer claims, the Debtors explicitly preserves the following claims and causes of action and may pursue such claims and causes of action after the Confirmation Date or may be enforced by way of setoff against Claims filed against the bankruptcy estate. The Reorganized Debtors have sole discretion to prosecute any such litigation and to object to any Claims as it sees fit.

**ARTICLE VII**
EFFECT OF CONFIRMATION

**7.01**    Vesting of Property. As of the Effective Date, the Reorganized Debtors shall be vested with the property of their respective estates, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan. Such Property of the Estate shall include all claims or causes of action arising in favor of the Debtors, under the Bankruptcy Code or any other applicable law; provided, however, that if after Confirmation the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code and there is an uncured default by the

Reorganized Debtors under the Plan, all of such property and claims shall revest in the Estate upon such conversion.

**7.02** <u>Plan Binding</u>. Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Reorganized Debtors, the Debtors' Creditors, and the holders of the Partnership Interest or Equity Interest in the Debtors, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor, Partner, or Equity Interest holder has accepted the Plan.

**7.03** <u>Reliance on Other Parties</u>. In connection with the Plan, the Debtors, the Debtor representatives, attorneys, accountant, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors, and such reliance shall presumptively establish good faith.

**7.04** <u>**Discharge**</u>. **Confirmation of the Plan shall discharge the Debtors of all their pre-Confirmation debts, except those debts carried forward under the terms of the Plan for which the Debtors shall remain liable for pursuant to the terms of the Plan and Confirmation Order.**

**7.05** <u>Permanent Injunction</u>. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtors. From and after Confirmation, all holders of Claims against the Debtors are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtors, the Reorganized Debtors, or their assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, or their assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtors, the Reorganized Debtors, or their assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtors or the Reorganized Debtors except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

### ARTICLE VIII
### MODIFICATION OF THE PLAN

**8.01** <u>Post-Confirmation Modification</u>. The Debtors as proponents of the Plan may modify it at any time after Confirmation but before the Bankruptcy Case is fully administered, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, that the Bankruptcy Court, after notice and hearing, confirms such modified Plan under § 1129, and that the circumstances warrant such modification.

**8.02**    Deemed Acceptance or Rejection. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within any time limit fixed by the Court such holder changes its previous acceptance or rejection.

## ARTICLE IX
### POST CONFIRMATION MATTERS

**9.01**    Application for Final Decree. The Reorganized Debtors shall file an application for final decree as soon as is practicable but not later than six months after the Effective Date. If the Bankruptcy Cases cannot be fully administered during this time period, or if there are still pending matters to be ruled upon by the Bankruptcy Court, the Reorganized Debtors shall request the Bankruptcy Court to extend that deadline after notice to all parties in interest and opportunity for hearing. If the Reorganized Debtors fail to file an application for final decree prior to such deadline or fail to timely request an extension of the same, then the Bankruptcy Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtors' Bankruptcy Cases.

**9.02**    U.S. Trustee.

(a)    Fees. The Reorganized Debtors shall continue to pay all fees incurred under 28 U.S.C. § 1930 until the Bankruptcy Cases are closed. All outstanding U.S. Trustee fees shall be paid on the Effective Date. These fees have been estimated above in Article V.

(b)    Reports. The Reorganized Debtors shall file quarterly post-confirmation reports in the form prescribed by the United States Trustee until the Bankruptcy Case is closed.

## ARTICLE X
### DEFAULT

**10.01**    Default by Debtors. In the event of a default by the Reorganized Debtors under the Plan, Creditors may exercise any rights granted to them under documents executed to implement the Plan or any rights available to such Creditors under applicable non-bankruptcy law. In the absence of documents executed to implement the Plan, it may be enforced as a contract. Notwithstanding any other provision, any Creditor that alleges a default shall give the Reorganized Debtor thirty (30) days' notice and an opportunity to cure before exercising any rights available upon default against the Debtor or the Reorganized Debtor.

**10.02**    Default by Creditors. In the event of a default by a creditor, the Debtors may enforce the Plan as a contract in a court of competent jurisdiction. The Reorganized Debtors may escrow payments to any creditor which defaults under the Plan until the default is cured. The Reorganized Debtors shall give the creditor written notice and an opportunity to cure at least 30 days before exercising this provision.

**10.03**    Conversion to Chapter 7. Conversion of the Bankruptcy Case to one under Chapter 7 shall be an additional remedy for default. In the event of a conversion to Chapter 7 of any of the

Reorganized Debtors, all property of the estate vested in that Reorganized Debtor pursuant to the Plan shall automatically revest in the Chapter 7 estate upon conversion without need of a separate order.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.01**  Jurisdiction over Matters. Until the Bankruptcy Cases are closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtors arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtors that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtors' Estates, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

## ARTICLE XII
## MISCELLANEOUS

**12.01**  Request for Relief under 11 U.S.C. § 1129(b) - "Cramdown". In the event any Impaired Class fails to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Debtors reserve the right to, and does hereby, request the Court to confirm the Plan in accordance with 11 U.S.C. § 1129(b). Any and all payments pursuant to this Plan, either pre- or post-confirmation shall be considered "new value" for purposes of that section.

**12.02**  Pre-Confirmation Amendment or Withdrawal/Revocation. The Debtors, as the proponents of the Plan, reserves the right to amend or withdraw/revoke the Plan at any time prior to the Confirmation Date. If the Debtors withdraw or revoke the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**12.03**  Entire Agreement. The Plan, the Confirmation Order, the Disclosure Statement, and all other documents and instruments to effectuate the Plan constitute the entire agreement and understanding among the Debtors and their Creditors relating to the subject matter hereof and supersede all prior discussions and documents.

**12.04**  Payments.

(a)  Delivery. Any payments or distributions made by the Debtors pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed) unless the Claimant files with the Bankruptcy Court and serves the Debtors with a change of address. All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Debtor and

the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

        (b)    <u>Voided Checks</u>. Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Debtors' attorney Todd Headden, at Hayward PLLC, 7600 Burnet Road, Ste. 530, Austin, Texas 78757 and by email to THeadden@HaywardFirm.com, by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made to the Debtors' attorney in writing within one-hundred eighty (180) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

    **12.05**  <u>Governing Law</u>. Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided by federal law, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan without regard to conflicts of law.

Dated: May 9, 2025        PLAN PROPONENT:

                                      KYLE CHAPMAN MOTOR SALES, L.P.;
                                      KCMS PREMIER CREDIT, INC.; AND
                                      CAVALIER LAMAR HOLDINGS, L.P.

By:       */s/ Kyle Chapman*
           Kyle Chapman
           President, KYLE CHAPMAN MOTOR SALES, L.P.; KCMS PREMIER CREDIT, INC.; and CAVALIER LAMAR HOLDINGS, L.P.

DRAFTED and APPROVED:

*/s/ Todd Headden*
Todd Headden (TX 24096285)
HAYWARD PLLC
7600 Burnet Road, Ste. 530
Austin, Texas 78757
(737) 881-7100 (phone and fax)
Email: THeadden@HaywardFirm.com
ATTORNEYS FOR DEBTOR